IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-CV-00864-RJC-SCR

| | |
|---|---|
| ELIJAH PURANDA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ) | |
| CITY OF CHARLOTTE ET. AL., ) | |
| ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Motion to Dismiss for Failure to State a Claim by Defendants City of Charlotte and Jacques Caravaca (Doc. No. 3), as well as the parties' briefs and exhibits. (Doc. Nos. 3-1, 5 & 7).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Doc. No. 3) be granted.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### A. Procedural Background

On November 2, 2023, Plaintiff Elijah Puranda filed this lawsuit in Mecklenburg County Superior Court asserting numerous federal and North Carolina state law claims related to the actions taken by Defendants during a traffic stop. (Doc. No. 1-1). On December 18, 2023, the

action was removed to this Court. (Doc. No. 1).

Plaintiff brings claims against Defendants City of Charlotte (the "City"); five named current or former Charlotte-Mecklenburg Police Department ("CMPD") employees in their official and individual capacities characterized as CMPD officers;[1] and unidentified CMPD Officer John Doe. Id. at 2-8. The Complaint contains fifteen enumerated claims, as follows: (1) battery against the CMPD officer Defendants in their individual and official capacities (Id. ¶¶ 76-87); (2) intentional infliction of emotional distress ("IIED") against all Defendants (Id. ¶¶ 88-101); (3) negligent infliction of emotional distress ("NIED") against all Defendants (Id. ¶¶ 102-114); (4) gross negligence against the City[2] (Id. ¶¶ 115-119); (5) gross negligence against the "County of Mecklenburg"[3] (Id. ¶¶ 120-124); (6) negligence/gross negligence against Pellicone in his individual and official capacity (Id. ¶¶ 125-131); (7) negligence/gross negligence against Knowles in his individual and official capacity (Id. ¶¶ 132-138); (8) negligence/gross negligence against Tedeschi in his individual and official capacity (Id. ¶¶ 139-145); (9) negligence/gross negligence against Caravaca in his individual and official capacity (Id. ¶¶ 146-152); (10) negligence/gross negligence against Bert in his individual and official capacity (Id. ¶¶ 153-159); (11) negligence/gross negligence against Doe in his individual and official capacity (Id. ¶¶ 160-166); (12) claim under 42 U.S.C. § 1983 for violation of the Fourth and Fourteenth Amendment against the CMPD officer Defendants in their individual and official capacities (Id. ¶¶ 167-174); (13) claim under 42 U.S.C. § 1983 against the City (Id. ¶¶ 175-178); (14) claim under 42 U.S.C.

---

[1] CMPD Officers Ryan Pellicone, Joshua Knowles, Kyle Tedeschi, Jacques Caravaca and Michael Bert. (Doc. No. 1-1 ¶¶ 16-45).
[2] Although titled as a "gross negligence" claim, Plaintiff alleges the City was, among other things, grossly negligent in its training, supervising, hiring, instructing, and/or monitoring law enforcement personnel. (Doc. No. 1-1 ¶ 117).
[3] While not named parties in this lawsuit, Plaintiff refers to CMPD Sergeant M. Kelly and Mecklenburg County as defendants at various points within the Complaint. Id. ¶¶ 46-51, 124. Neither are named as Defendants in the action nor have appeared in this action, and there is not any evidence that either has been served. Thus, the Court expresses no opinion or recommendation on any claims Plaintiff may be attempting to bring against Kelly or Mecklenburg County.

§ 1983 for procedural due process violation (Id. ¶¶ 179-183); and (15) claim under 42 U.S.C. § 1983 for unreasonable search and seizure in violation of the Fourth Amendment (Id. ¶¶ 184-187).

Defendants City and Caravaca are the only Defendants to have been served.[4] Now, in their pending Motion, those Defendants ask the Court to dismiss Plaintiff's claims against the City and duplicative official capacity claims against all Defendants, as well as all individual capacity claims against Defendant Caravaca, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants' Motion has been fully briefed and is ripe for determination.

### B. Factual Background

The Court accepts the facts in Plaintiff's Complaint as true for the purposes of considering the Motion to Dismiss.

On November 5, 2020, Plaintiff was eighteen years old and had recently obtained his driver's license. Id. ¶¶ 63-65. That night, Plaintiff traveling in his mother's vehicle in Charlotte, North Carolina. Id. ¶¶ 67-68. At the same time, CMPD Officers Pellicone, Knowles, Tedeschi, Caravaca, Bert, and Doe were responding to a call for service at a gas station near the intersection of Nations Ford Road and Archdale Drive. Id. ¶ 66-67. At or around 10:54 p.m., Plaintiff turned from Nations Ford Road onto Archdale Drive and was shortly thereafter pulled over by Pellicone for a traffic stop related to the theft of a vehicle. Id. ¶¶ 64, 67.

Pellicone exited his police cruiser with his weapon and flashlight drawn, allegedly ordering Plaintiff to "put your f**king hands up." Id. ¶ 67. Plaintiff complied with the order, after which Pellicone reached inside the vehicle to unlock the door, disengaged Plaintiff's seatbelt and removed Plaintiff from the vehicle, which Plaintiff characterizes as "snatching him from the vehicle." Id. The vehicle was seemingly not in park at the time that Plaintiff was removed from

---
[4] On March 12, 2024, a summons was issued for Defendant Pellicone, but no proof of service has been filed.

the vehicle causing it to roll forward into the police cruiser and causing damage to Plaintiff's vehicle. Id. ¶¶ 67, 77. Pellicone told Plaintiff that he was being detained. Id. ¶ 68. Plaintiff alleges upon "information and belief" that he was handcuffed and detained for approximately twenty-five minutes. Id. ¶ 70. Pellicone then asked Plaintiff for permission to search his vehicle, to which Plaintiff consented. Id. ¶ 68. After further investigations and confirming that the vehicle belonged to Plaintiff's mother, Pellicone released Plaintiff. Id. After being released, Plaintiff felt traumatized and left the scene. Id. ¶ 71.

While speaking to Plaintiff's mother—and after Plaintiff was released from detention and left the scene of the traffic stop—CMPD Sergeant Kelly realized he did not photograph the damage to Plaintiff's vehicle. Id. ¶ 72. Sergeant Kelly asked Plaintiff's mother to contact Plaintiff and have him return to the scene. Id. Upon Plaintiff's return, he was pulled over by Defendant Doe. Id. Doe exited his police cruiser with his hand on the holster of his weapon and began running toward Plaintiff's vehicle. Id. Pellicone told Doe to stand down and Doe complied. Id. Since the traffic stop, Plaintiff has experienced mental and emotional distress and has sought therapy as a result. Id. ¶¶ 74-75.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief

that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era. . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." Neitzke, 490 U.S. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III.  DISCUSSION

#### A. Claims Against the Individual Defendants

The Motion requests dismissal of all claims against Caravaca in his individual and official capacities as well as all claims against all individual Defendants in their official capacities.[5] (Doc. No. 3 at 1). The undersigned respectfully recommends dismissal of each.

##### 1. Defendants Caravaca, Knowles, Tedeschi, and Bert

Plaintiff has failed to allege any facts involving Caravaca, Knowles, Tedeschi, and Bert, except that they responded to a call at a gas station near the intersection of Nations Ford Road and Archdale Drive. (Doc. No. 1-1 ¶¶ 66-67). In fact, other than their responding to a gas station, Plaintiff's Complaint fails to plead a single specific factual allegation, as opposed to mere conclusory allegations, involving any of these individual Defendants. Id. ¶¶ 22-51, 66, 80, 85-87,

---

[5] As noted, the record does not reflect that any individual Defendants have been served except Caravaca. Because of lack of service, Defendants state that any appearance on behalf of the remaining individual Defendants is limited only to the official capacity claims as they are in effect claims against the City. Main v. Wingler, No. 5:22-CV-00157-KDB-DCK, 2024 WL 871384, at *4 (W.D.N.C. Feb. 29, 2024); Epps v. Duke Univ., 468 S.E.2d 846, 850 (N.C. App. 1996). Because such appearance is limited, Defendants do not move to dismiss the claims against any individual Defendants in their individual capacities other than Caravaca. While Plaintiff's briefing states, "Although Defendants argue that all Defendants are entitled to public official and qualified immunity," the Defendants, in fact, do not argue for public official or qualified immunity in the current Motion. (Doc. No. 5 at 4). Therefore, the undersigned expresses no opinion or recommendation on Plaintiff's claims against individual Defendants in their individual capacity, except Carvaca as discussed herein. See, e.g., Cantrell v. Frame, No. 2:18-cv-01106, 2019 WL 1234335, at *2 (S.D. W. Va. Mar. 18, 2019) (rejecting magistrate judge's finding of qualified immunity where defendants failed to properly invoke the defense at the motion to dismiss stage); Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 226 (4th Cir. 1997) (declining to consider qualified immunity defense not squarely before the district court and noting "we have refused to consider sua sponte a defense of qualified immunity in a § 1983 action when it was not properly preserved below." (citing Buffington v. Balt. Cnty., Md., 913 F.2d 113, 120-22 (4th Cir. 1990)).

89-93, 96, 99-100, 103-106, 109, 112-113, 119, 124, 132-159 171-172. Plaintiff did not plead that Caravaca, Knowles, Tedeschi, or Bert were involved in the traffic stops. Rather, Plaintiff affirmatively pleads that it was Pellicone who conducted the first traffic stop, and Doe who stopped Plaintiff a second time. Id. ¶¶ 67-75.

Plaintiff also has not alleged any general or specific facts to support that these Defendants either supervised[6] or witnessed, but failed to prevent, any unlawful behavior by Pellicone or Doe. Plaintiff "concedes it is unclear at this time the extent of the involvement of the other named Officer Defendants Bert, Knowles, Tedeschi and Caravaca at this stage in the proceedings." (Doc. No. 5 at 5). Plaintiff then incorrectly argues that "Defendant City of Charlotte and Caravaca offered no evidentiary materials, through discovery or otherwise at the Motion to Dismiss stage to show that Plaintiff could not produce evidence to support his allegations," dismissal is inappropriate. (Doc. No. 5 at 2). Neither Plaintiff nor Defendant are required to provide evidence at this motion to dismiss stage. Rather, Plaintiff must plausibly state facts to support his claims, but Plaintiff here has failed to meet the Iqbal and Twombly pleading standards. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555. As discussed above, Plaintiff's Complaint pleads Pellicone and Doe were present at the traffic stops. Plaintiff has failed to plead that other CMPD officers allegedly responding to a gas station were also present for, in the immediate vicinity of, or on the scene of the traffic stops. Gunsay v. Mozayeni, 695 F. App'x 696, 702-03 (4th Cir. 2017) (affirming granting motion to dismiss and discussing the bystander liability claims against two officers who "were in the immediate vicinity" and "also were present during" alleged deprivations of plaintiff's constitutional rights by other officers).

---

[6] Plaintiff's Complaint references CMPD Sergeant Kelly in a supervisory role, who is not a party to this action. (Doc. No. 1-1 ¶ 72).

Accordingly, the undersigned respectfully recommends that Defendants' Motion be granted as to Plaintiff's claims against Defendant Caravaca in his individual and official capacities and also be granted as to Plaintiff's claims against Defendants Knowles, Tedeschi, and Bert in their official capacities only.

### 2. Official Capacity Claims Against All Individual Defendants

It is well-established that official capacity § 1983 claims against individual defendants are duplicative when the employing municipality is also a defendant. Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Love-Lane v. Martin, 355 F.3d 766, 773 (4th Cir. 2004); Main v. Wingler, No. 5:22-CV-00157-KDB-DCK, 2024 WL 871384, at *4 (W.D.N.C. Feb. 29, 2024) (quoting Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). The same is true as to state law claims against public officials. Epps v. Duke Univ., 468 S.E.2d 846, 850 (N.C. App. 1996) (concerning state law claims, "[a] suit against a public official in his official capacity is basically a suit against the public entity . . . he represents. Therefore, an official capacity suit operates against the public entity itself, as the public entity is ultimately financially responsible for the compensable conduct of its officers."); see also Zimmer v. Town of Lillington, No. 5:16-CV-892-BO, 2017 WL 1184102, at *2 (E.D.N.C. Mar. 29, 2017) ("The claims against Kirkland and Letuli in their official capacities are dismissed as duplicative of plaintiffs' claims against the Town of Lillington."); J.S., ex rel. Duck v. Isle of Wight Cnty. Sch. Bd., 368 F. Supp. 2d 522, 527 (E.D. Va. 2005) (same) (citing Graham, 473 U.S. at 165–66; Love-Lane, 355 F.3d at 773); Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n.13 (4th Cir. 2006).

The City is a named Defendant in this action, and thus, Plaintiff's official capacity claims are duplicative and must be dismissed. The Court analyzes each of the claims brought against the

City below. Accordingly, the undersigned respectfully recommends for this reason too that Defendants' Motion be <u>granted</u> as to Plaintiff's claims against all individual Defendants in their official capacities only.

### B. <u>Claims Against the City</u>

The Motion requests dismissal of all claims against the City, and the undersigned agrees these claims should be dismissed. (Doc. No. 3 at 1).

#### 1. <u>Section 1983 Claims Against the City</u>

"Municipalities are 'persons' within the meaning of § 1983." <u>Franklin v. City of Charlotte</u>, 64 F.4th 519, 535 (4th Cir. 2023) (quoting <u>Monell v. Dep't of Soc. Servs. of N.Y.C.</u>, 436 U.S. 658, 690 (1978)). Thus, a suit may be brought against a municipality for a federal constitutional deprivation "when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'" <u>Starbuck v. Williamsburg James Cnty. Sch. Bd.</u>, 28 F.4th 529, 532-33 (4th Cir. 2022) (quoting <u>Monell</u>, 436 U.S. at 690-91). <u>Monell</u> liability under § 1983 cannot be predicated upon a <u>respondeat superior</u> theory. <u>Franklin</u>, 64 F.4th at 535. "Liability arises only when the offensive acts are taken in furtherance of municipal policy or custom." <u>Jones v. McComas</u>, No. 1:23-cv-215-KDB, 2023 WL 7174240, at *2 (W.D.N.C. Oct. 31, 2023).

There are three elements for <u>Monell</u> liability. <u>Id.</u> "First, the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee 'taken in furtherance of some municipal policy or custom.'" <u>Id.</u> (quoting <u>Milligan v. City of Newport News</u>, 743 F.2d 227, 229 (4th Cir. 1984)). "Second, the plaintiff must allege facts showing that the policy's creation is fairly attributable to the municipality." <u>Jones</u>, 2023 WL 7174240, at *2; <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1389 (4th Cir. 1987). "Third, the plaintiff must allege an affirmative causal link between the policy or custom, and the particular injury suffered by the plaintiff." <u>Jones</u>, 2023 WL

7174240, at *2; Franklin, 64 F.4th at 536-37.

With respect to the first element,

[A] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Starbuck, 28 F.4th at 533 (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)). "No matter which of these paths [to show a policy or custom that] a plaintiff takes, the 'official policy' itself must 'inflict' the alleged injury for the municipality to be liable under § 1983." Franklin, 64 F.4th at 536 (quoting Monell, 436 U.S. at 694) (alterations in original omitted).

The existence of a custom or usage may be found where a plaintiff alleges persistent and widespread practices, which although not authorized by written law, are so permanent and well-settled as to have the force of law. Spell, 824 F.2d at 1387 (quoting Monell, 436 U.S. at 690-91). "Custom and usage, in the sense of persistent and widespread . . . practices by municipal agents and employees, may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees" and "their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." Id. at 1387, 1391. "Actual knowledge may be evidenced by recorded reports to or discussions by a municipal governing body." Id. at 1387. "Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." Id. Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or

combinations of these. Id. at 1391. "The inculpating knowledge, whether actual or constructive, may be either that of the municipal governing body itself, or of municipal officials having final policymaking authority in municipal law enforcement matters." Id. Sporadic or isolated violations will not give rise to liability. Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 403 (4th Cir. 2014). "Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." Lytle, 326 F.3d at473 (quoting Kopf v. Wing, 942 F.2d 265, 269 (4th Cir.1991)).

In addition, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. (quoting Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997)) (alteration in original). "Mere negligence is insufficient to impose section 1983 liability on a municipality for alleged failure to train." S.F. v. Union Cnty. Bd. Of Educ., No. 3:23-CV-00139-FDW-DCK, 2024 WL 1316229, at *7 (W.D.N.C. Mar. 27, 2024) (quoting Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994)). "Moreover, neither a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." Id. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id.; Connick, 563 U.S. at 61-62 ("Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."); Doe v. Broderick, 225

F.3d 440, 456 (4th Cir. 2000).

The Court assumes *arguendo*, only for purposes of considering Plaintiff's § 1983 claims against the City, that Plaintiff has sufficiently alleged constitutional violations,[7] and concludes that Plaintiff failed to allege a policy or custom attributable to the City. Plaintiff's Complaint is devoid of any non-conclusory factual allegations of a policy or custom causing the alleged constitutional violations. Instead, the Complaint relies only on conclusory allegations that the City failed to train, hire, and supervise the individual Defendants and "maintained customs that are the moving force behind the constitutional violation." (Doc. No. 1-1 ¶¶ 177-178). Plaintiff has not alleged any facts of a persistent and widespread practice of similar conduct by CMPD officers nor that the City was on actual or constructive notice of such practice. Rather, the Complaint relies only on the facts involving Plaintiff on a single night. Single or isolated incidents do not create a custom or practice. Owens, 767 F3d at 403. The City must be on notice in some way such as through numerous prior instances of unconstitutional conduct in order to establish a custom or practice, which the Complaint does not allege. Lytle, 326 F.3d at 473. Likewise, Plaintiffs' theory that the City is liable for failure to train or supervise fails because the Complaint does not allege sufficient facts of a pattern of similar alleged constitutional violations by untrained or unsupervised employees and again relies on the single night involving Plaintiff.

Plaintiff contends that the relevant information would be gleaned during the discovery process.[8] (Doc No. 5 at 10). While that may be true where a plaintiff sufficiently alleges a claim for relief, Plaintiff has not done so here. Nor has Plaintiff moved to amend his Complaint.

---

[7] The Court expresses no opinion at this time on whether the Complaint alleges actual constitutional violations.
[8] To the extent Plaintiff alleges the City is liable for ratifying any individual Defendants' actions on November 5, 2020, through City actions after November 5, 2020, such as failing to discipline or otherwise, this claim fails as a matter of law. Franklin, 64 F.4th at 536-37 (concluding city was not liable under § 1983 for officer's shooting of plaintiff where final policymaker's "post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation" and observing that reversing the decision "cannot undo what is done.").

In sum, Plaintiff's Complaint fails to allege any policy or custom attributable to the City and dismissal of his § 1983 claims against the City is appropriate. Accordingly, the undersigned respectfully recommends that the Motion be <u>granted</u> with respect to Plaintiff's § 1983 claims against the City.

2. <u>State Law Claims Against the City</u>

Finally, Plaintiff's Complaint also brings state law claims against for battery, IIED, NIED, and negligence/gross negligence on the theory that the City is vicariously liable for the individual Defendants' actions. The City argues that Plaintiff's Complaint fails to plead sufficient facts in support of these claims to survive a motion to dismiss. After a thorough review of the Complaint, the Court agrees.

As discussed above, there is a dearth of factual allegations involving all individual Defendants except Pellicone and Doe. Even with respect to the allegations against Pellicone and Doe, the Complaint fails to sufficiently state claims to survive a motion to dismiss. Plaintiff's Complaint does not allege any facts supporting an absence of reasonable suspicion for the traffic stop other than conclusory statements that these Defendants used "excessive force" during the stop. Since Plaintiff has already failed to plausibly state facts to support an excessive force claim, Plaintiff's battery claim fails as well. <u>Kling v. Harris Teeter Inc.</u>, 338 F. Supp. 2d 667, 675-76 (W.D.N.C. Nov. 21, 2022) ("[T]o prevail on a claim against a police officer for assault and battery during arrest, a plaintiff must show that excessive force was used."). Plaintiff alleges no physical injuries from the interaction and the only alleged force involved approaching the car with a drawn weapon, unbuckling Plaintiff's seatbelt, removing Plaintiff from the car, and handcuffing him, all in response to the report of a stolen vehicle. <u>Kling</u>, 338 F. Supp. 2d at 675-76 (noting that force by arresting a person is not excessive simply because the plaintiff "feels she should not have been

arrested at all" due to an alleged lack of warrant or probable cause); Staples v. Parsons, No. 2:23-CV-00386, 2024 WL 1599137, at *8 (S.D.W. Va. Feb. 8, 2024) (concluding where plaintiff's truck matched the description of the stolen vehicle, his claim for unlawful search and seizure was not plausible and was dismissed) (citing United States v. Perkins, 363 F.3d 317, 321 (4th Cir. 2004)), R. & R. adopted, 2024 WL 1048138 (S.D.W. Va. Mar. 11, 2024); United States v. McCullers, 591 F. Supp. 3d 38, 47-48 (E.D. Va. 2022) ("[T]he steps [defendant officers] took during the Terry stops to protect their safety and maintain the status quo—drawing their weapons, handcuffing the defendants, moving them in handcuffs—did not impermissibly expand the Terry stop."), aff'd sub nom. United States v. Brown, No. 22-4564, 2024 WL 3838738 (4th Cir. Aug. 16, 2024); Brissett v. Paul, 141 F.3d 1157 (4th Cir. 1998) (Table) (affirming district court's decision that officer did not use excessive force where plaintiff did not offer evidence that he sustained any physical injury from being handcuffed and arms being held in painful position); Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002) ("And, in all events, a standard procedure such as handcuffing would rarely constitute excessive force.").

For these same reasons, Plaintiff's Complaint at the least fails to allege the necessary extreme and outrageous conduct intending to cause injury and the requisite negligent actions taken by the individual Defendants to support his claims remaining claims. Hogan v. Forsyth Country Club, 340 S.E.2d 116, 120 (N.C. App. 1986) (stating the elements of intentional infliction of emotional distress as (1) extreme and outrageous conduct exceeding all bounds usually tolerated by a decent society, (2) which is intended to cause and does cause (3) severe emotional distress); Wilkerson v. Duke Univ., 784 S.E.2d 154 (N.C. App. 2019) (stating elements of negligent infliction of emotional distress as (1) a defendant engages in negligent conduct; (2) it was reasonably foreseeable that the conduct would cause the plaintiff to suffer emotional distress; and

(3) the negligent conduct did indeed cause the plaintiff to suffer severe emotional distress); Moricle v. Pilkington, 462 S.E.2d 531, 533 (N.C. App. 1995) (stating elements of negligent hiring, supervision, or retention claim, including specific negligent act); McNulty v. Commc'ns Workers of Am., No. 3:12CV-22-MOC-DSC, 2012 WL 1569601, at *3 (W.D.N.C. Mar. 16, 2012) ("Additional factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)." (citing Beck v. City of Durham, 129 F. Supp. 844, 855 (M.D.N.C. 2000)). Finally, with respect to Plaintiff's gross negligence claim directly against the City, Plaintiff fails to sufficiently plead an underlying negligent action. To the extent Plaintiff attempts to plead a negligent hiring, supervision, or retention claim, Plaintiff's Complaint also fails to allege sufficient facts of the individual Defendants' incompetency and the City's notice of such incompetency. Moricle, 462 S.E.2d at 533 (stating elements necessary to establish a claim of negligent hiring, supervision, or retention as (1) the specific negligent act on which the action is founded; (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision; and (4) that the injury complained of resulted from the incompetency proved).

Accordingly, the undersigned respectfully recommends that the Motion be granted with respect to Plaintiff's state law claims against the City.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' Motion to Dismiss (Doc. No. 3) be **GRANTED**, and that all of Plaintiff's claims against the Defendant City, all claims against Defendant Caravaca in his individual and official

capacities, and all official capacity claims against the individual Defendants be dismissed.[9]

## IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad.

**SO RECOMMENDED**.  Signed: September 9, 2024

_____
Susan C. Rodriguez
United States Magistrate Judge

---

[9] The undersigned clarifies that the only remaining claims are the individual capacity claims brought against Defendants Pellicone, Knowles, Tedeschi, Bert, and Doe, which the record does not reflect have been served.